## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **ERIC FINKLE and JUSTIN WHIPPLE**, on behalf of the Buckeye Corrugated, Inc. Employee Stock Ownership Plan and on behalf of a class of all other persons similarly situated,<br><br>             **Plaintiffs,**<br><br>**v.**<br><br>**GREATBANC TRUST COMPANY, BUCKEYE CORRUGATED, INC., DOUGLAS BOSNIK, MARK HUSTED, JON MCGURK, and JOHN DOES 1-10,**<br><br>             **Defendants.** | **Case No. 1:23-cv-04732**<br><br>**Hon. Mary M. Rowland** |

## AMENDED COMPLAINT

Plaintiffs Eric Finkle and Justin Whipple, by their undersigned attorneys, on behalf of the Buckeye Corrugated, Inc. Employee Stock Ownership Plan, and similarly situated participants in the Plan and their beneficiaries, allege upon personal knowledge, the investigation of their counsel, and upon information and belief as to all other matters, as to which allegations they believe substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1.      Plaintiffs Eric Finkle and Justin Whipple ("Plaintiffs") bring this suit against GreatBanc Trust Company ("GreatBanc"), the fiduciary trustee for the Buckeye Corrugated, Inc. Employee Stock Ownership Plan ("the Plan" or "the ESOP") in 2018 when the participants in the Plan were required to choose between exchanging their ESOP stock for a new class of Buckeye

1

Corrugated, Inc. ("Buckeye") common stock or selling their ESOP stock back to the Company for a set price in conjunction with the termination of the Plan; and against officers and directors of Buckeye, Douglas Bosnik, Mark Husted, Jon McGurk, and John Does 1-10 (together, the "Management Defendants"), who were parties in interest and/or fiduciaries who received payments under three Stock Appreciation Rights Plans ("SAR Plans") and the opportunity to acquire additional Buckeye stock for less than fair market value as a result of the 2018 transaction.

2.     Plaintiffs are participants in the Plan, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), who were vested in shares of Buckeye allocated to their accounts in the Plan. The Plan was designated as an employee stock ownership plan (ESOP).

3.     This action is brought under Sections 404, 406, 409, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1106, 1109, and 1132(a), for losses suffered by the Plan and its participants caused by GreatBanc when it approved the transition from an ESOP to a direct ownership model that included an option to exchange the ESOP participants' shares of Buckeye common stock for Buckeye Class A Common Stock ("Class A Shares") and negotiated a tender offer sale price that was less than fair market value, and other plan-wide relief.

4.     As alleged below, the 2018 Transaction was designed to benefit Buckeye and the Management Defendants at the expense of Plan participants and the Plan has been injured and its participants have been deprived of hard-earned retirement benefits resulting from Defendants' violations of ERISA. ESOP participants were faced with the choice between tendering their ESOP shares for less than fair market value or converting their ESOP shares to a new class of Buckeye equity but giving up the valuable put option rights that were attached to their ESOP shares and

also seeing a dilution of their equity interest because Buckeye would be issuing additional shares that would primarily be purchased by Management Defendants for less than fair market value.

5.    At all relevant times, Buckeye was a privately held company and was the Plan's sponsor. In or about September 2018, GreatBanc, in its capacity as Trustee of the ESOP, (1) approved Buckeye's plan to terminate the ESOP and transition to a model in which Buckeye management, directors, and others would own Buckeye shares directly rather than as beneficial owners through the ESOP and increase the number of Buckeye shares with the result of diluting the ownership interest of the ESOP participants; (2) approved the payments to the Management Defendants under three SAR Plans sponsored by Buckeye; (3) enabled the Management Defendants to purchase additional Buckeye shares for less than fair market value; (4) approved the exchange of Buckeye common stock that had been held by the ESOP's trust and had a mandatory put option for the benefit of participants for Class A Shares of Buckeye common stock that did not have a put option; and (5) negotiated the price term of a tender offer for Plan participants in which Plan participants were forced to sell or exchange 100% of the issued and outstanding shares of Buckeye common stock, for approximately $231,854,904, specifically 915,307 shares for $221,504,257 and 52,013 shares for $10,350,647 (the "2018 ESOP Transaction" or "Transaction").

6.    GreatBanc represented the Plan and its participants as Trustee of the Plan's trust in the ESOP Transaction. It had sole and exclusive authority to negotiate the terms of the 2018 ESOP Transaction. GreatBanc caused the Plan to enter into direct or indirect transactions with parties in interest that were prohibited transactions under ERISA § 406(a), 29 U.S.C. § 1106(a).

7.    The Management Defendants, in conjunction with GreatBanc, caused the Plan to enter into transactions with parties in interest, including themselves, that were prohibited

transactions under ERISA § 406(a) and (b), 29 U.S.C. § 1106(a) and (b). Specifically, the Management Defendants orchestrated a scheme whereby, as the Plan fiduciaries with the duty to appoint and monitor GreatBanc, they caused the Plan to convert its stock to a non-voting E class of stock which was then sold to Buckeye for less than fair market value or converted to A class shares which Management Defendants also acquired as a result of this integrated transaction for less than fair market value. After the transaction, Management Defendants owned a large percentage of the company's equity, whereas before they only held synthetic equity in the form of stock appreciation rights valued at approximately $8 million. Management Defendants also received additional consideration from the SAR Plans from Buckeye which had acquired stock from ESOP participants in the integrated transaction.

8.      The 2018 ESOP Transaction allowed Buckeye and the Management Defendants to acquire Buckeye's equity for less than fair market value, for the reasons explained below, and dilute the equity interest of the ESOP participants. As ERISA fiduciaries, the Management Defendants were bound to act solely in the interests of the Plan's participants and beneficiaries; instead they usurped the profits that should have accrued to the participants with the continuing and foreseeable rise of e-commerce, from which Buckeye would benefit as a supplier of corrugated packaging to Amazon.com, Inc., and other e-commerce companies, and they purchased the ESOP's Buckeye stock through an integrated transaction involving several steps for less than fair market value. Plaintiffs and other rank-and-file Buckeye employees would no longer share in Buckeye's success through the Plan, which for more than twenty years had been a major part of Buckeye employees' compensation and retirement package and would also lose their valuable put option rights under the ESOP. And the company's equity value, and therefore the value of the A shares, would suffer because the company no longer operated as an ESOP-owned S Corp, which

paid no federal taxes and therefore generated massive excess cash flows. After building Buckeye as a successful company through years of labor, the ESOP's participants, including Plaintiffs, were deprived of the benefits of the company's growth by management that took for themselves profits that should have further funded the retirements of Buckeye's employee-owners. In approving the exchange of the ESOP's common stock for Buckeye Class E Common Stock ("Class E Shares") without voting rights and the required election by participants either to convert their stock to Class A Shares without a put option or tender their shares to Buckeye for less than fair market value and the resulting enrichment of the Management Defendants, GreatBanc failed to fulfill its ERISA duties, as Trustee and fiduciary, to the Plan and its participants, including Plaintiffs.

9.      The Management Defendants are parties in interest who indirectly acquired equity from the ESOP, which had previously owned 100% of the equity in Buckeye, and received other consideration, including payments from Buckeye under the SAR Plans, in the 2018 ESOP Transaction. The Management Defendants are liable under ERISA for knowingly participating in the prohibited stock transactions and GreatBanc's breaches of fiduciary duty, as fiduciaries who had a duty to monitor GreatBanc in the integrated ESOP Transaction, as fiduciaries who controlled their own compensation within a 100% ESOP-owned company, and as co-fiduciaries to GreatBanc who participated in, enabled, and did not make reasonable efforts to remedy GreatBanc's breaches of fiduciary duty.

10.      Buckeye is a party in interest and fiduciary which directly acquired some of the ESOP's Buckeye shares for less than fair market value in the 2018 ESOP Transaction.

11.      Through this action, Plaintiffs seek to enforce their rights under ERISA and the Plan, to recover the losses incurred by the Plan and/or the improper profits realized by Defendants resulting from their causing prohibited transactions and breaches of fiduciary duty, knowingly

participating in the prohibited transactions and breaches of fiduciary duty, and failing to meet their duties as co-fiduciaries, and equitable relief, including reformation of 2018 ESOP Transaction contracts and rescission of the Transaction. Plaintiffs request that these prohibited transactions be declared void, Defendants be required to restore any losses to the Plan arising from their ERISA violations, Defendants be ordered to disgorge any improper profits, and any monies recovered for the Plan be allocated to the accounts of the Class members in the Plan or a successor trust.

## JURISDICTION AND VENUE

12.     This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiffs under ERISA § 502(a), 29 U.S.C. § 1132(a), to require GreatBanc and the Management Defendants to make good to the Plan losses resulting from their violations of the provisions of Title I of ERISA, to obtain appropriate equitable relief against GreatBanc and the Management Defendants, to restore to the Plan any improper profits that have been made by breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of ERISA.

13.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and it has original jurisdiction pursuant to 28 U.S.C. § 1331.

14.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some of the acts or omissions giving rise to the claims occurred in this District, the Plan was administered in part in this District, where Plan trustee GreatBanc is located, and because a defendant resides or may be found in this District.

## PARTIES

15.     Plaintiff Erik Finkle was a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), at all relevant times. Plaintiff resides in Walworth, New York. He worked at Buckeye's Rochester Division (formerly known as Koch Container). He was employed there from in or about 1983 to 1985 and from in or about 1986 until 2019. He was vested in shares of Buckeye common stock in his Plan account. He was forced to liquidate his Buckeye stock in the Plan as part of the ESOP Transaction and received less than fair market value for them as explained herein.

16.     Plaintiff Justin Whipple was a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), at all relevant times. Plaintiff resides in Rushville, New York. He worked at Buckeye's Rochester Division (formerly known as Koch Container). He was employed there from in or about 1999 to 2019. He was vested in shares of Buckeye common stock in his Plan account. He was forced to liquidate his Buckeye stock in the Plan as part of the ESOP Transaction and received less than fair market value for them as explained herein.

17.     Defendant GreatBanc Trust Company provides ESOP trustee services. GreatBanc's principal place of business is 801 Warrenville Road, Suite 500, Lisle, Illinois 60532.

18.     Defendant GreatBanc was the Trustee of the Plan at the time of the 2018 ESOP Transaction. GreatBanc was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it was the trustee within the meaning of ERISA § 403(a), 29 U.S.C. § 1103(a), and because it exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

19.    As Plan trustee, Defendant GreatBanc was a named fiduciary, within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a), under the terms of the written instruments under which the Plan was established and maintained.

20.    GreatBanc was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at all relevant times because it was Trustee of the Plan and therefore a fiduciary and provider of services to the Plan.

21.    At all relevant times, Defendant Douglas Bosnik was the President and Chief Executive Officer (CEO) of Buckeye and a member of the Board of Directors of Buckeye. Upon information and belief, Defendant Bosnik received Class A shares at below fair market value pursuant to the 2018 ESOP Transaction. By virtue of his membership on the Buckeye Board of Directors and/or his position as President and CEO, Defendant Bosnik was a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), at the time of 2018 ESOP Transaction. At the time of the 2018 ESOP Transaction, Defendant Bosnik was a "party in interest" as to the ESOP as defined in ERISA § 3(14)(A) and (H), 29 U.S.C. § 1002(14)(A) and (H). Upon information and belief, Defendant Bosnik resides in South Carolina.

22.    At all relevant times, Defendant Mark Husted was the Executive Vice President (EVP) and Chief Financial Officer (CFO) of Buckeye and a member of the Board of Directors of Buckeye. Upon information and belief, Defendant Husted received Class A shares at below fair market value pursuant to the 2018 ESOP Transaction. By virtue of his membership on the Buckeye Board of Directors and/or his position as EVP and CFO, Defendant Husted was a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), at the time of 2018 ESOP Transaction. At the time of the 2018 ESOP Transaction, Defendant Husted was a "party in

interest" as to the ESOP as defined in ERISA § 3(14)(A) and (H), 29 U.S.C. § 1002(14)(A) and (H). Upon information and belief, Defendant Husted resides in Ohio.

23.     At all relevant times, Defendant Jon McGurk was the Vice President and Chief Operating Officer (COO) of Buckeye and a member of the Board of Directors of Buckeye. Upon information and belief, Defendant McGurk received Class A shares at below fair market value pursuant to the 2018 ESOP Transaction. By virtue of his membership on the Buckeye Board of Directors and/or his position as VP and COO, Defendant McGurk was a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), at the time of 2018 ESOP Transaction. At the time of the 2018 ESOP Transaction, Defendant McGurk was a "party in interest" as to the ESOP as defined in ERISA § 3(14)(A) and (H), 29 U.S.C. § 1002(14)(A) and (H). Upon information and belief, Defendant McGurk resides in Ohio.

24.     The Directors were fiduciaries of the Plan because they appointed GreatBanc to serve as Trustee, and had a duty to monitor GreatBanc's performance, which means they functioned as fiduciaries. Further, when a company is 100% owned by an ESOP, as was the case here, the executives and directors function as fiduciaries when making decisions about their own compensation and equity interests in the company, as Management Defendants did here.

25.     Defendants John Does 1-10 are other parties in interest to the Plan who indirectly purchased the ESOP's Buckeye stock in the 2018 ESOP Transaction and/or received compensation from the SAR Plans as a result of the 2018 ESOP Transaction, whose identities are unknown to Plaintiffs. Once their identities are ascertained, Plaintiffs will substitute their names.

26.     Defendant Buckeye is a Delaware corporation with its headquarters in Fairlawn, Ohio. Prior to the 2018 ESOP Transaction, Buckeye was an Ohio corporation.

9

## FACTUAL ALLEGATIONS

### Background Regarding Buckeye and the ESOP

27.     Buckeye was founded in 1958 and produces a variety of corrugated board packaging and display products. Buckeye bills itself as the largest independent sheet plant operator in the United States, with over 850 employees and over $450 million in annual sales. Buckeye has operations in ten states – Ohio, New York, Texas, Tennessee, South Dakota, South Carolina, Iowa, Indiana, Minnesota and Pennsylvania. Buckeye's headquarters is in Fairlawn, Ohio. Buckeye was incorporated in Delaware on December 13, 1984, and August 21, 2018.

28.     Buckeye adopted the Plan with an effective date of January 1, 1994.

29.     Buckeye terminated the ESOP with an effective date of December 20, 2018. However, the Plan's assets were not fully liquidated until 2019.

30.     Buckeye had long been an S Corp and was an S Corp immediately before the ESOP Transaction. ESOP-owned S Corps do not pay federal taxes.

31.     Initially, the ESOP owned 30% of Buckeye's stock. In 2006, the ESOP purchased the remainder of Buckeye's stock and became the 100% owner of Buckeye.

32.     Buckeye stock is not, and never was, readily tradable on an established securities market. There is and was no public market for Buckeye stock.

33.     Employees of Buckeye participated in the Plan. The Plan covered substantially all employees of Buckeye who completed one year of service and 1,000 service hours while being employed, were 18 years of age, and were not covered by a collective bargaining agreement.

34.     Defendant Husted signed the Plan's Form 5500 annual returns/reports under penalty of perjury as the Plan Administrator for the Plan Years 2009 through 2019.

35.     The Plan's Forms 5500 report at Part II Lines 2a & 3a that Buckeye was the Plan's sponsor and administrator.

36.     Buckeye was from the inception of the Plan the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

37.     Buckeye was from the inception of the Plan the Plan's administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

38.     Buckeye was an ERISA fiduciary to the Plan as its administrator.

39.     Buckeye appointed fiduciaries of the Plan, including GreatBanc as Trustee of the Plan. Buckeye was an ERISA fiduciary to the Plan because of its authority to appoint fiduciaries.

40.     Buckeye was at the time of the 2018 ESOP Transaction a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14).

41.     The Plan is a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).

42.     The Plan was designed to invest primarily in the employer securities of Buckeye.

43.     The Plan's principal asset was Buckeye common stock at the time of the 2018 ESOP Transaction.

44.     The Plan was an individual account plan, or defined contribution plan, under which a separate individual account was established for each participant.

45.     The Plan's Buckeye common stock had a valuable put option which required Buckeye or the Plan to repurchase the participant's shares upon death, disability, retirement or termination of employment.

46. The Plan's Buckeye stock had voting rights, which required that participants be allowed to vote on a merger, liquidation, dissolution, recapitalization, reclassification, or sale of substantially all the assets of the Company.

47. The conversion of the Plan's common stock to Class E Shares and the contemporaneous issuance of Class A Shares was a recapitalization of Buckeye and a reclassification of the Plan's common stock.

48. But Defendants did not allow the Participants to vote on the recapitalization and reclassification, which was a violation of ERISA and the Plan.

49. Buckeye appointed GreatBanc as Trustee of the Plan. As Trustee, GreatBanc had sole and exclusive authority to negotiate the terms of the 2018 ESOP Transaction on behalf of the Plan, including the price or exchange value the Plan's participants received for Buckeye stock.

50. The directors of Buckeye, including Defendants Bosnik, Husted, and McGurk, acted on behalf of Buckeye in appointing GreatBanc as Trustee and had a duty to monitor GreatBanc's performance as Trustee.

51. The directors of Buckeye, including Defendants Bosnik, Husted, and McGurk, had the authority to retain or terminate GreatBanc as Trustee.

52. As executives and directors of an ESOP-owned company, Defendants Bosnik, Husted, and McGurk owed fiduciary duties to the Plan with respect to their compensation and equity allocations.

53. As Trustee of the Plan, GreatBanc had a duty to ensure that any transactions between the Plan and other parties, including the reclassification of the Plan's assets from Buckeye common stock to Class E Shares, the sale of Buckeye stock by the Plan, and the recapitalization of Buckeye were fair and reasonable and in the best interests of the participants and beneficiaries.

54.     As Trustee of the Plan, GreatBanc had a duty to ensure that the Plan received no less than fair market value in a transaction in which the ESOP participants sold or exchanged their Buckeye stock.

55.     As Trustee of the Plan, GreatBanc had a duty to ensure that the terms of the 2018 ESOP Transaction were fair to participants who chose to convert their ESOP stock to Class A Shares.

56.     As Trustee of the Plan, GreatBanc had a duty to ensure that the 2018 ESOP Transaction did not enrich the Management Defendants at the expense of the ESOP participants.

### The 2018 ESOP Transaction

57.     Buckeye expanded rapidly in the years leading up to the 2018 ESOP Transaction.

58.     Buckeye purchased at least five new divisions and expanded several existing divisions in the ten years leading up to the 2018 ESOP Transaction.

59.     Buckeye's success during the years leading up to the 2018 ESOP Transaction was due, in part, to the rapid growth of e-commerce. Buckeye supplied packaging to Amazon.com, Inc. and other e-commerce companies. Amazon and other e-commerce companies were major customers of Buckeye.

60.     As of 2018, industry experts and analysts were forecasting continued rapid growth in the market for the e-commerce packaging industry. For example, an industry analyst forecasted a compound annual growth rate exceeding 14% from 2017 through 2022 for the e-commerce packaging industry. A 2017 industry study forecasted that the demand for boxes for e-commerce packaging would grow more than 10% per year through 2020.

61. In February 2018, the U.S. Census Bureau of the Department of Commerce estimated that e-commerce sales for the fourth quarter of 2017 increased by 16.9% from the fourth quarter of 2016.

62. Online sales grew from approximately a 5% share of total U.S. retail sales in 2012 to approximately 10% of total retail sales in 2018. In 2018, retail industry experts were forecasting that online sales would continue to increase their share of total retail sales.

63. In or about August 2018, GreatBanc, in its capacity as Trustee, approved the conversion of Buckeye from an ESOP-owned company to a company owned directly by individual shareholders (the "Conversion Plan").

64. Pursuant to the Conversion Plan, the ESOP would be terminated, the ESOP participants' Buckeye common stock would be reclassified as Buckeye Class E Shares without voting or put rights, and ESOP participants could sell their Class E Shares held in the Plan to Buckeye or exchange their Class E Shares for newly-issued Buckeye Class A Shares without a mandatory put option on a one-to-one basis. Under the Conversion Plan, Buckeye would issue additional Class A Shares that would be sold to Management Defendants and other employees and Management Defendants would receive payments from Buckeye under the SAR Plans.

65. ESOP participants were not permitted to vote on the Conversion Plan even though it was a recapitalization of Buckeye and reclassification of the Plan's stock.

66. ESOP participants were not given enough time to properly evaluate whether to sell their Class E Shares or exchange their Class E Shares for Class A Shares. The ESOP participants, including Plaintiffs, are not sophisticated investors and yet they were given just over a month to decide whether to sell or exchange their shares.

14

67.     Even if an ESOP participant was a sophisticated investor, they were not given enough information to properly evaluate whether to sell their Class E Shares or exchange their Class E Shares for Class A Shares. The ESOP participants did not receive any valuation reports upon which to evaluate whether $242 per share constituted fair market value. Although ESOP participants received an offering memorandum discussing risk factors that could potentially harm Buckeye's business, they did not receive any information about Buckeye's upside potential, such as management's forecast for future revenues and profits. Nor did ESOP participants receive any information about the value of the put option rights that were attached to their ESOP stock but not the Class A Shares.

68.     If the ESOP participants had received a valuation report that GreatBanc claimed to support the price of $242 per share, participants would have realized that the valuation was outdated and did not reflect the rapidly increasing fair market value of Buckeye common stock. As alleged herein, industry trends and Buckeye-specific trends indicated that Buckeye's share price was likely to increase, and the two-month-old valuation no longer reflected Buckeye's valuation by November 2018 when ESOP participants had to decide whether to sell or exchange their shares. Fair market value must be determined as of the transaction date, not a date months earlier. In addition, ESOP participants would have realized that they were not receiving any consideration for giving up their put option rights in the 2018 ESOP Transaction.

69.     In or about September 2018, GreatBanc, in its capacity as Trustee, approved the $242 per share price ESOP participants would receive if they tendered their Class E Shares to Buckeye.

70.     The sale and exchange as part of the 2018 ESOP Transaction included all the Class E Shares in the Class members' Plan accounts.

15

71.     GreatBanc did not conduct adequate due diligence for the 2018 ESOP Transaction regarding Buckeye's future growth prospects or industry trends for the corrugated packaging industry, including increasing demand from the e-commerce market. GreatBanc improperly relied on projections and financial information supplied by Buckeye management, that is by Management Defendants and their subordinates, without properly probing and questioning the projections and financial information or the assumptions and conclusions of GreatBanc's financial advisors, which led to the Plan participants' receipt of less than fair market value for their Buckeye stock.

72.     GreatBanc did not perform due diligence in the 2018 ESOP Transaction similar to the due diligence that is performed by parties to large corporate transactions that did not involve an ESOP. GreatBanc's due diligence in the 2018 ESOP Transaction was less extensive and thorough than the due diligence typically performed by the parties for corporate transactions of similar size and complexity. GreatBanc did not have expertise on the corrugated packaging industry and its professional advisors likewise lacked expertise with regard to the corrugated packaging industry. GreatBanc did not consider the value of the put rights associated with the ESOP's common stock. GreatBanc did not consider whether it was in the best interests of the Plan and participants to forego the favorable tax treatment enjoyed by ESOP-owned S Corps.

73.     GreatBanc relied on a valuation report for the 2018 ESOP Transaction that failed to appropriately consider Buckeye's future growth prospect or industry trends for the corrugated packaging industry, including increasing demand from the e-commerce market.

74.     The transaction price for the 2018 ESOP Transaction did not adequately account for the Plan's controlling interest in the company.

75. GreatBanc did not adequately consider transaction structures for the 2018 ESOP Transaction that would have increased the consideration received by the ESOP participants for their Class E Shares of Buckeye stock, such as an earnout provision.

76. GreatBanc did not adequately consider elements of the 2018 ESOP Transaction that negatively impacted ESOP participants, such as the loss of voting rights for Class E Shares and the loss of put option rights for Class A Shares. GreatBanc should have negotiated additional consideration for ESOP participants for the loss of valuable rights attached to their ESOP shares.

77. Further, GreatBanc had consistently valued Plan assets on a liquidation basis in the Plan's annual Forms 5500, despite its being an ongoing concern that is in business to this day. A company valued on a liquidation basis almost always returns a lower fair market value than a going concern valuation because the book value of the company is, except in rare circumstances, worth much less than the present value of future cash flows—especially here where growth in packaging was projected to be robust as alleged herein. At the time of the 2018 ESOP Transaction, Buckeye was a growing and consistently profitable company worth far more than its liquidation value. By valuing Plan assets on a liquidation basis, GreatBanc undervalued the Plan's assets, failed to use sound business principles, and failed to negotiate for the Plan participants to receive fair market value.

78. As soon as December 31, 2018, the Plan, based on management's projections and independent appraisals, estimated the value of Buckeye stock as approximately $270.85/share, which is approximately 13% more per share than the average the Plan participants were paid per share only a month earlier. That 2018 EOY estimate itself undervalues the amount the Plan participants were underpaid.

17

79. GreatBanc received additional compensation from Buckeye for the 2018 ESOP Transaction above and beyond its annual fee for serving as ESOP Trustee.

80. As a result of GreatBanc's errors and omissions, Plan participants received less than fair market value for their Buckeye stock in the 2018 ESOP Transaction whether they tendered their shares or converted their shares to Class A Shares, and the Plan's participants who tendered their shares, including Plaintiffs, received less money than they were due for the Buckeye stock allocated to their individual Plan accounts.

81. As Buckeye officers and/or directors, the Management Defendants knew or should have known that the share price for the 2018 ESOP Transaction did not fully value Buckeye's future growth prospects or industry trends for the corrugated packaging industry and was less than the fair market value of the ESOP's Buckeye stock, and that the transaction terms did not provide additional consideration for valuable rights that the ESOP participants would be losing, including their put option rights.

82. The Management Defendants initiated a Transaction that was primarily for their own benefit. The Management Defendants were involved in conceiving of, facilitating, and executing the 2018 ESOP Transaction.

83. The Management Defendants knew or should have known that GreatBanc had not performed adequate due diligence in the 2018 ESOP Transaction.

84. The Management Defendants failed to properly supervise and monitor GreatBanc and acted in their own interests to increase their equity stake in the company.

85. The Management Defendants knew the projections used by GreatBanc to value the Plan's buckeye stock were stale and undervalued the stock by at least 15% or more.

86.     As the Trustee for the 100% owner of Buckeye, GreatBanc was required to determine whether the terms of the proposed Transaction were in the best interests of the Plan and its participants, including Plaintiffs. GreatBanc should have determined that the Plan and its participants would have been better served by a sale price that was at or greater than fair market value, or GreatBanc should have demanded a higher sale price. In addition, GreatBanc should have negotiated additional consideration for the loss of the ESOP put option. GreatBanc also should have negotiated Transaction terms that did not enrich Management Defendants at the expense of ESOP participants. GreatBanc caused the Plan to enter into a Transaction that primarily benefited the Management Defendants, and not the Plan participants and beneficiaries who were shortchanged.

## CLAIMS FOR RELIEF

## COUNT I

### Causing Prohibited Transaction Forbidden by
### ERISA § 406(a), 29 U.S.C. § 1106(a), Against GreatBanc

87.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

88.     ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here GreatBanc, from causing a plan, here the Plan, to engage directly or indirectly in a sale or exchange of any property, here Buckeye stock, with a party in interest, here Buckeye and the Management Defendants, as took place in the 2018 ESOP Transaction.

89.     ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits GreatBanc from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest, here Buckeye and the Management Defendants, of any assets of the Plan, as took place in the 2018 ESOP Transaction with the sale of a portion of the

Plan's equity to Buckeye and transfer of a portion of the Plan's equity interest to Management Defendants.

90.     GreatBanc authorized the transactions between the Plan and the parties in interest in its capacity as Trustee for the Plan.

91.     GreatBanc caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the 2018 ESOP Transaction.

92.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and to restore to the plan any profits of the fiduciary which have been made through the use of assets of the plan by the fiduciary, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

93.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief to a plan under ERISA § 409.

94.     GreatBanc has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial and is subject to equitable relief as appropriate.

## COUNT II

### Breaches of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a), Against GreatBanc

95.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

96.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan and defraying reasonable expenses of administering the plan, (B) with the

care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

97. The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

98. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and to restore to the plan any profits of the fiduciary which have been made through the use of assets of the plan by the fiduciary, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

99. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief to a plan under ERISA § 409.

100. GreatBanc was required to undertake an appropriate and independent investigation of the fair market value of Buckeye stock in 2018 to fulfill its fiduciary duties, and an appropriate investigation would have revealed that the valuation used for the 2018 ESOP Transaction did not reflect the fair market value of the Buckeye stock sold by the ESOP participants. GreatBanc failed to conduct a thorough investigation into the merits of the proposed transaction and further breached its duties in approving the exchange of the Plan's Buckeye common stock for Class E Shares and approving the tender offer price offered to the Plan participants in their sale or exchange of

Buckeye Class E Shares in the 2018 ESOP Transaction. GreatBanc allowed the tender offer purchase price to be based on a stale valuation that did not reflect the fair market value of Buckeye at the time of the 2018 ESOP Transaction. GreatBanc also allowed the 2018 ESOP Transaction to proceed on an expedited timeline that did not allow the Plan's participants adequate time to evaluate the terms of the transaction. GreatBanc also failed to ensure that Plan participants were allowed to vote on the recapitalization of Buckeye and the reclassification of Plan common stock. GreatBanc also failed to ensure that the Plan's participants received adequate information, including valuation reports and other information about Buckeye's financial performance, to evaluate the terms of the transaction. GreatBanc approved transaction terms that did not provide any consideration for the ESOP participants' loss of valuable rights attached to their ESOP shares, including the mandatory put option. GreatBanc also approved transaction terms that enriched Management Defendants at the expense of the Plan's participants. GreatBanc failed to assess whether the 2018 ESOP Transaction was in the best interests of Plan participants in light of the loss of favorable tax treatment for company earnings when the ESOP was terminated.

101.    GreatBanc was required to act independently on behalf of the Plan to probe projections and other information provided by Buckeye and/or the Management Defendants for the 2018 ESOP Transaction, and it did not adequately do so. GreatBanc was required to probe and question the assumptions and conclusions of its financial advisors, and it did not adequately do so.

102.    GreatBanc failed to determine whether the proposed Transaction terms were in the best interests of the Plan's participants and beneficiaries, or act with an eye single to the participants' and beneficiaries' best interests.

103.    GreatBanc breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

104.     GreatBanc caused losses to the Plan by its breaches of fiduciary duty in an amount to be proved specifically at trial and is subject to equitable relief as appropriate.

## COUNT III

### Engaging in Prohibited Transaction Forbidden by
### ERISA § 406(b) 29 U.S.C. § 1106(b), Against Management Defendants and Buckeye

105.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

106.     ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), *inter alia*, mandates that a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own account."

107.     ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3), *inter alia*, mandates that a plan fiduciary shall not "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

108.     Management Defendants dealt with Plan assets in their own interest and for their own account by causing the Plan to convert and then sell Buckeye stock below fair market value. Management Defendants also obtained the right to purchase Buckeye Class A Shares for less than fair market value. This greatly benefited the Management Defendants to the substantial detriment of the Plan participants where the Management Defendants acquired equity stakes in the company at below fair market value.

109.     Management Defendants received consideration for their own personal account from Buckeye as part of the 2018 ESOP Transaction in the form of additional consideration under the SAR Plans and Class A Shares, and Buckeye also purchased Buckeye stock from ESOP participants as part of the same Transaction.

110.     As part of the 2018 ESOP Transaction, Buckeye purchased Class E Shares from ESOP participants after those shares had been exchanged for Buckeye common stock.

111. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and to restore to the plan any profits of the fiduciary which have been made through the use of assets of the plan by the fiduciary, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

112. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief to a plan under ERISA § 409.

113. Management Defendants and Buckeye caused losses to the Plan and/or received consideration by the prohibited transactions in an amount to be proved specifically at trial and are subject to equitable relief as appropriate.

## COUNT IV

### Breaches of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a), Against Management Defendants

114. Plaintiffs incorporate the preceding paragraphs as though set forth herein.

115. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan and defraying reasonable expenses of administering the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

116.    The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

117.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and to restore to the plan any profits of the fiduciary which have been made through the use of assets of the plan by the fiduciary, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

118.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief to a plan under ERISA § 409.

119.    The Management Defendants were required to ensure that they did not receive company stock at less than fair market value and to ensure that GreatBanc undertook an appropriate and independent investigation of the fair market value of Buckeye stock in or about September 2018 to fulfill their fiduciary duties. An appropriate investigation would have revealed that the valuation used for the 2018 ESOP Transaction did not reflect the fair market value of the Buckeye stock sold by the Plan and therefore would cause Management Defendants to receive company stock at less than fair market value. Management Defendants knew this because they had not provided updated projections as of the transaction date and they knew the company was growing rapidly. In designing and executing the 2018 ESOP Transaction, Management Defendants worked with GreatBanc to deprive participants of their right to vote on the recapitalization and reclassification.

25

120.     Management Defendants breached their duties under ERISA § 404(a)(1), 29 U.S.C.
§ 1104(a)(1).

121.     Management Defendants caused losses to the Plan by its breaches of fiduciary duty
in an amount to be proved specifically at trial and are subject to equitable relief as appropriate.

## COUNT V

### Knowing Participation in ERISA Violations Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Against the Management Defendants

122.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

123.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), *inter alia*, permits a plan participant to
bring a civil action to obtain appropriate equitable relief to redress violations of the provisions of
Title I of ERISA, or to enforce the provisions of Title I of ERISA or the terms of a plan.

124.     The Supreme Court has held that anyone, including a non-fiduciary, who receives
the benefit of conduct that violates ERISA may be subject to equitable remedies under ERISA
§ 502(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the
transaction unlawful." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251
(2000).

125.     The Management Defendants were parties in interest to the Plan under ERISA
§ 3(14), 29 U.S.C. § 1002(14), as described above.

126.     As a result of the prohibited transaction described above, the Management
Defendants, directly or indirectly through a series of integrated transactions, received Plan assets,
*i.e.*, the ESOP's Buckeye stock, for less than fair market value, and received additional
consideration, including payments under the SAR Plans.

127.     The Management Defendants knew or should have known: (1) about the existence
of the Plan, (2) about the Plan's sale, directly or indirectly, of its Buckeye stock to the Management

Defendants in the 2018 ESOP Transaction, (3) that GreatBanc was the Trustee and a fiduciary to the Plan, (4) that they were officers or directors or persons having powers or responsibilities similar to officers or directors, employees, or otherwise parties in interest, and (5) that GreatBanc caused or permitted the Plan to engage in the 2018 ESOP Transaction.

128.    As officers or directors or persons having powers or responsibilities similar to officers or directors, and as individuals who had knowledge of the deal's details through their negotiation of the 2018 ESOP Transaction and through the contracts consummating the ESOP Transaction, the Management Defendants were aware of sufficient facts that the ESOP Transaction constituted a prohibited transaction with parties in interest. As parties in interest, the Management Defendants are liable for the violations alleged in Count I.

129.    As a result of the breaches of fiduciary duty described above, the Management Defendants, directly or indirectly through a series of integrated transactions, received Plan assets, *i.e.*, the ESOP's Buckeye stock and additional consideration, including payments under the SAR Plans and the opportunity to increase their equity stake in Buckeye.

130.    The Management Defendants knew or should have known that the Plan's participants received less than fair market value for their Buckeye stock and that GreatBanc's investigation was inadequate. The Management Defendants were involved in providing company information to GreatBanc and in responding to GreatBanc's due diligence requests, and appointed GreatBanc as fiduciary Trustee and thus had a duty to monitor. The Management Defendants as high-ranking Buckeye officers and as appointing directors knew or should have known facts regarding the scope of GreatBanc's due diligence, the information provided to GreatBanc and its agents by Buckeye (such as projections), and company valuations, sufficient to give them knowledge of GreatBanc's fiduciary breaches. The Management Defendants likewise knew or

should have known such facts as parties to the 2018 ESOP Transaction, who had company financial information and conducted their own valuation.

131.    The Management Defendants are liable for the violations alleged in Counts II and III.

132.    The Management Defendants have profited from the prohibited transaction and breaches of fiduciary duty in an amount to be proven at trial and, upon information and belief, they remain in possession of some or all the assets that belong to the Plan.

133.    The Management Defendants are subject to appropriate equitable relief including disgorgement or restitution of any improper profits, accounting for profits, having a constructive trust placed on any proceeds received (or which are traceable thereto), having the transactions rescinded or reformed, surcharge, requiring all or part of the stock consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.

## COUNT VI

### Co-Fiduciary Liability Under ERISA § 405(a), 29 U.S.C. § 1105(a),
### Against the Management Defendants

134.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

135.    ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1), provides that a fiduciary "with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such an act or omission was a breach."

136.    ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), further provides liability on a fiduciary "if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach."

28

137.    ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), further provides liability on a fiduciary "if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

138.    The Management Defendants who were directors of Buckeye had express or functional authority to appoint and remove the Trustee, and thus each Management Defendant was a fiduciary with respect to the Plan at the time of the 2018 ESOP Transaction.

139.    The Management Defendants who were directors of Buckeye had a fiduciary responsibility to monitor GreatBanc's performance as Trustee and to ensure that it was complying with the terms of the Plan and ERISA's statutory requirements. See 29 C.F.R. § 2509.75-8 (FR-17).

140.    A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations and must take prompt and effective action to protect the plan and participants when the monitored fiduciaries are not meeting their fiduciary obligations.

141.    The Management Defendants who were directors of Buckeye breached their fiduciary duty to monitor GreatBanc by failing to adequately monitor GreatBanc's performance or have a system in place for doing so and standing idly by as the ESOP suffered losses as a result of GreatBanc's fiduciary violations with respect to the 2018 ESOP Transaction.

142.    As such, under ERISA § 405(a)(1)-(2), 29 U.S.C. § 1105(a)(1)-(2), the Management Defendants are liable as co-fiduciaries for the Plan's losses resulting from GreatBanc's fiduciary breaches.

143.    The Management Defendants failed to make reasonable efforts to remedy GreatBanc's violations of ERISA associated with the 2018 ESOP Transaction despite knowing of

such violations, such as ensuring that the Plan received fair market value for its Buckeye stock or bringing the matter to the attention of the Secretary of Labor.

144. Pursuant to ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), the Management Defendants are liable as co-fiduciaries for the Plan's losses resulting from GreatBanc's fiduciary breaches.

## CLASS ACTION ALLEGATIONS

145. Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All participants in the Buckeye Corrugated, Inc. Employee Stock Ownership Plan (the "Plan") and the beneficiaries of such participants as of the date of the 2018 ESOP Transaction. Excluded from the Class are the directors and officers who purchased Buckeye Corrugated, Inc. ("Buckeye") stock from the Plan, directly or indirectly, and their immediate families; and legal representatives, successors, and assigns of any such excluded persons.

146. The Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class members are unknown to Plaintiff at this time, the Plan's 2018 Form 5500 filing reports that as of January 1, 2018, there were 527 participants in the Plan.

147. Questions of law and fact common to the Class include, but are not limited to, the following:

> i. Whether GreatBanc served as Trustee in the Plan's conversion of Buckeye common stock into Class E Shares and sale to the Company or transfer of those shares;
>
> ii. Whether GreatBanc was an ERISA fiduciary of the Plan;

30

iii. Whether GreatBanc caused the Plan to engage in a prohibited transaction under ERISA by permitting the Plan to sell Buckeye stock to parties in interest;

iv. Whether GreatBanc engaged in a good faith valuation of the Buckeye stock in connection with the 2018 ESOP Transaction;

v. Whether GreatBanc caused the Plan and ESOP participants to receive less than fair market value for their Buckeye stock;

vi. Whether GreatBanc breached its fiduciary duty to undertake an appropriate and independent investigation of the fair market value of Buckeye stock in or about September 2018;

vii. Whether the Management Defendants and Buckeye were parties in interest;

viii. Whether the Management Defendants and Buckeye, as parties in interest, participated in a prohibited transaction and breaches of fiduciary duty;

ix. Whether the Management Defendants were fiduciaries;

x. Whether the Management Defendants are liable as co-fiduciaries for the fiduciary breaches by GreatBanc;

xi. Whether the Management Defendants who were directors of Buckeye breached their fiduciary duty to monitor GreatBanc;

xii. The amount of losses suffered by the Plan and its participants as a result of Defendants' ERISA violations;

xiii. The amount of profits Management Defendants and Buckeye made as a result of their ERISA violations;

xiv. The appropriate relief for GreatBanc's violations of ERISA; and

31

xv. The appropriate relief for the Management Defendants' knowing participation in GreatBanc's violations of ERISA and breaches of their fiduciary duties.

148.    Plaintiffs' claims are typical of those of the Class. For example, Plaintiffs, like other Plan participants in the Class, suffered a diminution in the value of their Plan accounts, and an insufficient distribution of moneys from their Plan accounts upon termination of the Plan, because the Plan participants received less than fair market value for their Buckeye stock.

149.    Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

150.    Class certification of Plaintiffs' Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members, and/or because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for GreatBanc.

151.    The names and addresses of the Class members are available from the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for judgment against Defendants and for the following relief:

A.   Declare that Defendant GreatBanc caused the Plan to engage in a prohibited transaction and thereby breached its duties under ERISA;

B.   Declare that Defendant GreatBanc breached its fiduciary duties under ERISA to the Plan and the class members;

C.   Declare that the Management Defendants and Buckeye knowingly participated in a prohibited transaction with the Plan and GreatBanc's breaches of fiduciary duty in violation of ERISA;

D.   Declare that the Management Defendants breached their fiduciary duty to monitor GreatBanc;

E.   Declare that the Management Defendants are liable as co-fiduciaries for Defendant GreatBanc's breaches of fiduciary duty;

F.   Order Defendants to make good to the Plan and/or to any successor trust(s) the losses resulting from the violations of ERISA and disgorge any profits they made through use of assets of the Plan;

G.   Impose a constructive trust on all dividends and distributions paid to the Management Defendants on the Buckeye stock they purchased in the 2018 ESOP Transaction;

H.   Order that Defendants provide other appropriate equitable relief to the Plan and/or a successor trust and its participants and beneficiaries, including but not limited to surcharge, rescission, reformation of Transaction contracts, providing an

accounting for profits, and imposing a constructive trust and/or equitable lien on any funds or stock wrongfully held by Defendants;

I.     Order the proceeds of any recovery for the Plan to be allocated to the accounts of the class members or a successor trust to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

J.     Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

K.     Enjoin Defendants from dissipating any of the stock they received from the Transaction held in their actual or constructive possession until the Plan participants' rights can be adjudicated;

L.     Enjoin Defendants from transferring or disposing of any of the stock they received from the Transaction to any person or entity, which would prejudice, frustrate, or impair the Plan participants' ability to recover the same;

M.     Order Defendants to pay prejudgment and post-judgment interest;

N.     Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiffs as class representatives and their counsel as class counsel; and

O.     Award such other and further relief as the Court deems equitable and just.

Dated: November 6, 2023                  Respectfully submitted,

                                         **BAILEY & GLASSER LLP**

                                         */s/ Patrick O. Muench*
                                         Patrick O. Muench
                                         318 W. Adams Street, Suite 1512
                                         Chicago, IL 60606
                                         Telephone: (312) 500-8680
                                         Facsimile: (304) 342-1110
                                         pmuench@baileyglasser.com

                                         Ryan T. Jenny
                                         Gregory Y. Porter (*pro hac vice*)
                                         1055 Thomas Jefferson Street, NW, Suite 540
                                         Washington, DC 20007
                                         Telephone: (202) 463-2101
                                         Facsimile: (202) 463-2103
                                         rjenny@baileyglasser.com
                                         gporter@baileyglasser.com

                                         **FEINBERG, JACKSON, WORTHMAN &
                                         WASOW, LLP**
                                         Dan Feinberg (*pro hac vice*)
                                         Anne Weis (*pro hac vice*)
                                         2030 Addison Street ● Suite 500
                                         Berkeley, CA 94704
                                         Tel: (510) 269-7998
                                         dan@feinbergjackson.com
                                         anne@feinbergjackson.com

                                         *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 6, 2023, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

<u>*/s/ Patrick O. Muench*</u>
Patrick O. Muench